UNITED STATES v. DAY. See Case No. 1,581.

---

## Case No. 14,935.
### UNITED STATES v. DE BARE.

[6 Biss. 358;[1] 7 Chi. Leg. News, 321; 21 Int. Rev. Rec. 213; 7 Leg. Gaz. 210.]

District Court, E. D. Wisconsin. June, 1875.

INDICTMENT—VARIANCE—RECEIVING STOLEN PROPERTY—CHARACTER OF PROPERTY.

1. Where an indictment for receiving stolen goods charges that the accused received the goods from the principal felon, and the proofs show that they were received from a person to whom the thief had delivered them, the variance is fatal.

2. In a prosecution for receiving stolen postage stamps, the proof was that the thief deposited them in an express office directed to the defendant, and after arrest gave a written order for the property to a postmaster, who took them, and subsequently, by order of the postoffice department, re-deposited them in the express office and they were forwarded to the defendant, who received them. Held, that the character of the stamps as stolen property ceased in the hands of the postmaster, and that there could be no conviction.

The indictment charged that on the 19th of November, 1874, the defendant [Reuben E. De Bare] with intent to defraud the United States, wilfully and feloniously received from one Crawford a quantity of postage stamps, the said stamps having been stolen from a post-office of the United States, and the defendant, at the time he received the same, knowing them to have been stolen.

At the trial the testimony disclosed the following facts: In the night of November 12th, 1874, the post-office at Unionville, Missouri, was robbed by Crawford, and postage stamps to the amount of about $156 were stolen. The robber was detected and arrested at

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Quincy, Ill. Previous to his arrest, he had deposited the stamps in the form of an enclosed package in the express office at Quincy, directed to the defendant at Milwaukee, Wis. After his arrest, he surrendered other property .stolen from the Unionville post-office, and on request of the Quincy postmaster, gave the latter a written order on the agent of the express company, for the package of stamps. Upon presentation of this order at the express office the stamps were delivered to the Quincy postmaster, who testified that he took the package to his office, opened it, counted the stamps and placed them in the postoffice vault. He thus retained possession of the stamps until subsequently ordered by the post-office department to let them go forward to the consignee. Using the external wrapper and fastenings, he found upon the package when it came to his possession he re-inclosed the stamps and re-deposited them in the express office to be forwarded, the package bearing the identical directions placed upon it by the original consignor.

Testimony was given on the trial to show that the stamps after being thus forwarded, came to the hands of the defendant. The jury were instructed, that in order to convict, it must be proven as charged in the indictment, that the defendant received the stamps from Crawford, and that if the jury should find from the evidence that the Quincy postmaster, as his individual act, or for and in behalf of the post-office department, forwarded the stamps to the defendant, and that the defendant received them from the postmaster and not from Crawford, there must be a verdict of acquittal, even though the stamps were originally stolen by Crawford. The verdict was against the accused. His counsel moved for a new trial on two grounds: (1) That the verdict was against the evidence and the instructions of the court, and moreover, upon the facts proved, that the jury should have been directed to render a verdict of acquittal. (2) That when the stamps came into the hands of the Quincy postmaster, their character was that of stolen property recovered by the owner; that they thereafter ceased to have that character, and that when received by the defendant, they were not, as to the person from whom they came, stolen stamps, and therefore there could be no conviction in this case.

Levi Hubbell, U. S. Dist. Atty.
N. S. Murphey, for defendant.

DYER, District Judge. Careful consideration of the question has confirmed me in the opinion that the instruction given to the jury was right. Undoubtedly it is not, in all cases, essential that an indictment against a receiver should allege by whom the property was stolen. A party may be indicted for receiving goods stolen by persons unknown. In a case where an indictment was objected to because it did not ascertain the principal thief, and did not, therefore, state to whom in particular the prisoner was accessory, it was held good [Thomas' Case, O. B. 1766];[2] but "where the principal, however, is known, it seems proper to state it according to the truth." 2 East, P. C. 781. It is laid down in the books as a settled principle, that if an indictment allege that the goods were received from the thief, it must be proved that they were received from the thief, and if it appear that the thief gave them to a person from whom the accused received them, it is a fatal variance. In support of this principle, Arundel's Case, 1 Lewis, 115, cited by defendant's counsel, on this motion, is the leading authority. The prisoner was indicted for receiving stolen goods, and the indictment alleged that he received them from the person who stole them, and that this person was a certain ill-disposed person to the jurors unknown. It was proved that the person who stole the property handed it to J S., and that J. S. delivered it to the prisoner; and Parke, J., held, that on this indictment it was necessary to prove that the prisoner received the property from the person who actually stole it, and he would not allow it to go to the jury to say whether or not the person from whom he was proved to have received it was an innocent agent of the thief.

Now, in the case at bar, the indictment charges that the defendant received the postage stamps from Crawford. To convict, the proof should conform to the charge. If the proof is that the defendant received the stamps from the Quincy postmaster and not from Crawford, the variance is fatal. Crawford was the principal felon. After arrest, as we have seen, the stamps passed into the possession of the Quincy postmaster, who took them from the express office, and subsequently, by direction of the department, forwarded them to the consignee. There was no relation of principal and agent between Crawford and the postmaster. The former had originally authorized the express company to carry and deliver the stamps to the defendant. By his order in writing, given to the postmaster, he withdrew that authority, ceased to be a party to the contract of transportation, and surrendered the stamps to the postmaster. The subsequent re-deposit of the stamps in the express office, was the act of the postmaster under direction of the department, and I think the case is directly within the principle of Arundel's Case before cited.

I am convinced, therefore, that it would not have been error to have instructed the jury that the variance between the allegation in the indictment and the proof, is fatal to a conviction.

If there be any doubt upon the point thus far discussed, there can be none, I think,

concerning the second ground urged in support of this motion. The ownership of these stamps was in the United States. The Quincy postmaster was the agent of the owner. When Crawford surrendered them to this agent they were reclaimed property that had been stolen, but their character as stolen property ceased in the hands of the postmaster, so far as the subsequent receiver was concerned. The moral turpitude of a receiver under such circumstances may be as great as in case the property comes directly from the hands of the thief, because the criminal intent on his part exists equally in both cases. But to create the offense which the law punishes, the property, when received, must, in fact, and in a legal sense, be stolen property. If these stamps were received by the defendant, they did not, when received, upon the proof made, bear this character. They had been captured from the thief by the owner, and the act of forwarding them to the alleged receiver was the act of the owner.

I regard this point conclusively settled upon authority In State v. Ives, 13 Ired. 338, it was held that an indictment for receiving stolen goods must aver from whom the goods were received, so as to show that the person charged received them from the principal felon. If received from any other person the statute does not apply. In Reg. v. Schmidt, L. R. 1 Crown Cas. 15, the case was this: Four thieves stole goods from the custody of a railway company, and afterwards sent them in a parcel by the same company's line addressed to the prisoner. During the transit the theft was discovered, and, on the arrival of the parcel at the station for its delivery, a policeman, in the employ of the company, opened it and then returned it to the porter, whose duty it was to deliver it with instructions to keep it until further orders. On the following day the policeman directed the porter to take the parcel to its address, where it was received by the prisoner, who was afterwards convicted of receiving the goods knowing them to be stolen, upon an indictment which laid the property in the goods in the railway company. Held, that the goods had got back into the possession of the owner so as to be no longer stolen goods, and that the conviction was wrong. The case of Reg. v. Lyons, 41 E. C. L. 122, was cited by counsel for the prosecution in support of a conviction in this case. The report of the case is meager, but it appears that a brass weight had been stolen by a lad in the employ of the prosecutors; and it having been taken from him by another servant in the presence of one of the prosecutors, it was restored to the lad again, in order that he might take it for sale to the house of the prisoner, where he had been in the habit of selling similar articles before. The lad took it and sold it for 6½d. The point was made that as the property had been restored to the possession of the owner it could not afterwards be considered as stolen property. Coleridge, J., said that for the purposes of the day, he should consider the evidence sufficient to sustain the indictment, but would take a note of the objection. The prisoner was convicted and sentenced to transportation, and no change was subsequently made in the judgment of the court. But this case of Reg. v. Lyons is expressly overruled in the case of Reg. v. Dolan, 29 Eng. Law & Eq. 533, Lord Campbell, C. J., delivering a judgment in which Justices Coleridge, Cresswell, Platt and Williams concur. Lord Campbell says: "With regard to the Reg. v. Lyons, I think that the facts cannot be accurately stated. But if they be, I must say that I cannot concur with that decision, and I think that it ought not to be acted upon." Of his previous decision in that case, Coleridge, J., says: "Having no recollection of the case of Reg. v. Lyons, I cannot take upon myself to say it is wrongly reported. But if it is not, I am bound to say that I think I made a great mistake."

Motion for a new trial granted.