## COPERTINO et al. v. UNITED STATES.

### (Circuit Court of Appeals, Third Circuit. March 27, 1919.)

### No. 2431.

1. RECEIVING STOLEN GOODS ⊸2—CHARACTER OF STOLEN PROPERTY.

In a prosecution for receiving copper stolen from interstate train, *held*, the property did not lose its stolen character, where railroad detectives did not take physical possession of it, but merely watched the place where it was hidden, in order to see what would become of it.

2. RECEIVING STOLEN GOODS ⊸9(2)—INSTRUCTION—EVIDENCE.

Instruction that testimony would justify inference that accused had received copper knowing it was stolen is not erroneous, because charging that mere possession imputed knowledge that property had been stolen, where evidence showed defendants proceeded directly to place where copper was hidden in a cemetery and were loading it into an automobile when arrested.

In Error to the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Michael Copertino and Peter Cucorello were convicted of having stolen property in their possession, and bring error. Affirmed.

George E. Cutley, of Jersey City, N. J., for plaintiffs in error.

Charles F. Lynch, U. S. Atty., of Newark, N. J., and J. L. Bodine, Asst. U. S. Atty., of Trenton, N. J.

Before WOOLLEY, Circuit Judge, and HAIGHT and MORRIS, District Judges.

HAIGHT, District Judge. The plaintiffs in error were convicted under an indictment which charged them with having violated an act approved on February 13, 1913 (37 Stat. 670, c. 50 [Comp. St. §§ 8603, 8604]), in that they feloniously had in their possession certain bars of copper which had theretofore been stolen, while constituting a part of an interstate shipment of freight, knowing the same to have been stolen. The government's evidence tended to prove that some time in the late afternoon or early evening of April 17, 1918, a car containing a large number of copper bars, which had been shipped from the state of Montana, destined for New York Harbor, while in transit over the lines and in the possession of the Lehigh Valley Railroad Company, was broken into near South Plainfield, N. J, and four of the bars of copper were stolen. The theft was discovered later in the evening, and two detectives in the employ of the railroad company were detailed on the case. They arrived in the vicinity of the place where it was presumed the robbery had taken place, in the early morning of April 18th, and about 7 o'clock, after having searched for several hours, they discovered two of the stolen bars in a cemetery which was situated immediately adjacent to the railroad tracks and between them and a public highway. One of the detectives then went to South Plainfield to telephone for "relief," and the other one secreted himself in a car, which was standing on the tracks some 200 or 300 feet away

from the cemetery, for the purpose of watching the copper. He had been there about an hour when the defendant Copertino came along the railroad tracks from the direction of South Plainfield, entered the cemetery, and immediately went to the place where the copper was located. Just before, or at about the same time that, Copertino reached the cemetery, the defendant Cucorello arrived there in an automobile. Both of them then began to load the copper in the automobile. In the meanwhile the detective who had gone to telephone returned, and he and his companion immediately proceeded to arrest the defendants. One of the defendants threw one of the bars of copper, which they had already loaded, from the automobile and attempted to drive away. Both were, however, very quickly apprehended and placed under arrest.

[1] The defendants denied having the copper in their possession, or having attempted to take it in their possession. While they admitted being in the cemetery, they sought to explain their presence there by stating that they had driven into the cemetery because the one who was driving the car mistook the entrance to the cemetery for a public highway which they wished to take to reach the place where they intended to go. At the close of the testimony, a motion was made on behalf of the defendants that the court direct a verdict of acquittal. The ground upon which the motion was based was that even though the copper had been stolen, and the defendants had it in their possession, either actual or constructive, at the time of their arrest, as charged, still they could not be convicted of the crime for which they were indicted, because the copper had lost its character of stolen property before it came into their possession. The refusal of the court below to direct a verdict is the principal reason relied upon for a reversal of the judgment. The verdict has, of course, established that the jury accepted the version of the Government's witnesses. It is claimed that the copper had lost its character of stolen property, because the discovery thereof by the detectives and their subsequent actions, as before detailed, had reinvested the Lehigh Valley Railroad Company, which for the purposes of this case may be considered the owner, with possession of it. Hence it is urged that the case falls within the principle of the decisions in Reg. v. Schmidt, 1 Crown L. C. 15, Reg. v. Dolan, 29 Eng. Law & Eq. 533, U. S. v. De Bare (D. C. E. D. Wis.) 25 Fed. Cas. 796, No. 14,935, and People v. Jaffe, 185 N. Y. 497, 78 N. E. 169, 9 L. R. A. (N. S.) 263, 7 Ann. Cas. 348.

As it would unduly burden this opinion to recite the facts in each of those cases, it will suffice to state that in each of them, before the stolen property reached the receiver, it had been recovered by the owner or his agent, and had actually been taken into his physical possession or that of his agent, and afterwards carried to the receiver, by either the original thief or the instrumentality through which the thief originally intended to convey it, at the express direction of the owner or his agent, for the purpose of entrapping the receiver, so that the property was actually delivered to the receiver by the authority of the owner and through his agency. The principle which underlay the decision in each of those cases was that such acts on the part

of the owner or his agent had caused the stolen property to lose its character as such, and consequently that the person in whose possession it afterwards came could not be convicted of having received stolen property, when the property which he actually received was not, in a legal sense, stolen property.

While we may readily concede that the principle invoked is a sound one, yet we are unable to perceive that it is applicable to this case; nor can we conceive how, in reason, it can be extended to cover a set of facts such as has been developed in this case. The detectives did not take or attempt to take the stolen copper in their possession; they did not exercise or attempt to exercise any control or dominion over it. The most that they did was to watch it, presumably to see what would happen to it, if anything, and to prevent its eventually being carried away, until the "relief" for which they had sent could arrive. The copper had not, therefore, come into either the actual or constructive possession of the owner. Indeed, before the detectives attempted to exercise any control over it, the defendants appeared upon the scene and took actual possession of it. Neither did the detectives cause, or attempt to cause, the property to be delivered to the defendants. Hence it did not come into the defendants' possession by authority of the owner or through its agency. There is therefore missing from this case two elements which, manifestly, are necessary to bring the case within the principle of the before-cited cases. Consequently we do not think that the copper had lost its character of stolen property at the time the defendants took it into their actual possession. The remarks of one of the judges in Reg. v. Schmidt, supra, are very pertinent to the facts in this case. In discussing the question as to when the goods lost their character of stolen goods, he said:

"Suppose the policeman (who was acting for the owner and was in its employ), instead of opening the bundle, *had simply watched it without saying anything to the porter* (also the owner's agent); *surely then the goods would not have ceased to be stolen.*"

This is precisely what the detectives did in this case. If their actions in this case could be said to have been a retaking of possession of the stolen property, so as to change its character as such, the difficulties in apprehending criminals in cases such as this would be immeasurably increased, and without reason. We are of opinion, therefore, that the learned trial judge committed no error in declining to direct a verdict.

[2] It is next urged, although no exception was taken to it at the trial, that the jury were instructed that mere possession of the stolen copper was sufficient to impute to the defendants knowledge that it had been stolen, and to cast upon them the burden of explaining their possession. We do not think, however, that any such construction can be placed on the charge. The jury were charged that, under the testimony in the case, an inference or conclusion that the defendants had possession of the copper with knowledge that it had been stolen would be justified. The testimony adduced on the part of the government regarding the defendants' connection with the stolen property, the method by which they acquired actual possession, the place where

they acquired it, and all of the surrounding circumstances, if unexplained, would clearly, if not inevitably, lead to the conclusion that the defendants knew that the property had been stolen.

Finding no error in the record, the judgment below is affirmed.