UNITED STATES of America,
Appellee,

v.

Robert S. EGGER, Appellant.

UNITED STATES of America,
Appellee,

v.

Joseph LACEY, Appellant.

Nos. 72-2195, 72-2160.

United States Court of Appeals,
Ninth Circuit.

Nov. 28, 1972.

Joel A. C. Rindal (argued), of Carroll, Rindal & Shulman, Seattle, Wash., Anthony Savage (argued), Seattle, Wash., for appellants.

Douglas McBroom, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Seattle, Wash., for appellee.

Before CHOY and GOODWIN, Circuit Judges, and SOLOMON, District Judge.*

ALFRED T. GOODWIN, Judge:

Joseph Lacey, a bail bondsman, and Robert Egger, an attorney, appeal their convictions under 18 U.S.C. § 2113(c) (knowing possession of money taken in a bank robbery) and 18 U.S.C. § 371 (conspiracy).

The government's case tended to show that Dennis and Beverly Lehman had robbed at least four banks in the State of Washington; that Joseph Lacey, doing business as the Lacey Bonding and Insurance Company of Seattle, received part of the stolen money, with knowledge of the source; and that Robert Egger, with the requisite knowledge, received $4,047 from Beverly Lehman after she had covertly become a government witness. There was also evidence of a conspiracy on the part of Egger, Lacey, and the Lehmans.

The principal contention on appeal is that because of the cooperation of Beverly Lehman with agents of the Federal Bureau of Investigation the money received by Egger had lost 'its character as stolen money and was, instead, "recovered" property under the rule of United States v. Cohen, 274 F. 596 (3d Cir. 1921).

Other errors alleged include illegal electronic surveillance, improper police practices bordering on entrapment, and hearsay evidence received over Egger's objection at the trial.

The jury could have believed the following to be the facts:

After Dennis and Beverly held up a bank in Spokane, Dennis took a portion of the loot to Seattle, leaving Beverly to secrete the remainder in safety deposit boxes. When Dennis was arrested, the FBI quickly recovered all the Spokane money except $4,047, which Beverly had placed in a safety deposit box in Yakima.

Beverly went to Seattle to inquire about bail for Dennis and to ask Dennis what to do with the money in Yakima. An employee of Lacey Bonding referred Beverly to Egger. Beverly engaged Egger to help represent Dennis, and she gave Egger the keys to all her safety deposit boxes. She told Egger that the box in Yakima contained stolen money.

Beverly was arrested for her part in the Spokane robbery, and Egger undertook to represent her. Beverly and Egger discussed the failure of the FBI to discover the money in the Yakima safety deposit box. (The key to the safety deposit box had been misnumbered, and a key furnished the FBI by the bank would not open the box.) Some time later, Beverly hired a Spokane attorney to represent her because a conflict of interest had developed between her and Dennis. Her new counsel, without the knowledge of Dennis and Egger, arranged for Beverly to cooperate with the prosecution. Beverly remained in communication with Egger.

Egger returned the keys to Beverly, together with a note from Dennis. The note, which Egger admitted reading, instructed Beverly to:

"(1) Go alone.

"(2) Tell no one when.

"(3) Get permission from the Marshal for a trip to Everett to go to your mother.

* The Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

"(4) Fly to Seattle and back to Yakima the same day.

"(5) Go to the bank at 1:00 or 1:30.

"(6) Get the stuff and leave immediately. If any delay * * * leave at once. If the SD [safety deposit girl] leaves you at any time or signals anyone, leave immediately.

"(7) Go at once to different bank, make sure not followed, and put all $20 bills in cashier's check to any name."

In the company of FBI agents, Beverly went to Yakima and obtained the money. During the drive from Yakima to Seattle, an FBI agent counted the money and recorded the serial numbers.

Operating a concealed tape recorder, the product of which later proved unintelligible, Beverly delivered the money to Egger in Seattle. He, in turn, delivered it to Lacey, who then gave Egger checks and cash.

Egger and Lacey contend they cannot be guilty of the offense specified by Section 2113(c) because of the common-law rule governing the receipt of stolen but recovered property. The rule is stated in United States v. Cohen:

" * * * When the actual, physical possession of stolen property has been recovered by the owner or his agent, its character as stolen property is lost, and the subsequent delivery of the property by the owner or agent to a particeps criminis, for the purpose of entrapping him as the receiver of stolen goods, does not establish the crime, for in a legal sense he does not receive stolen property * * *." 274 F. at 599.

The rule, however, is inapposite in the circumstances of this case. The FBI never assumed "actual, physical possession" of the stolen property. To be sure, a government agent traveled with Beverly, counted the money, and recorded serial numbers, but these actions were performed as a form of observation and surveillance rather than as possession on behalf of the rightful owner. The stolen money was not being returned to its owner when the government agent counted the money instead of asking Beverly to count the bills and call out their serial numbers. Cf. Copertino v. United States, 256 F. 519 (3d Cir. 1919). In Copertino, copper bars stolen from a railroad company were hidden in a cemetery. Detectives for the railway discovered the bars, hid outside the cemetery, and arrested the thieves when they came to take away the loot. The court held the stolen-property-recovery rule not applicable. The detectives' actions were more in the nature of surveillance than a recovery of property prior to an arrest.

The early English cases appellants have cited were concerned with property which had been returned to the true owner and thereafter used by him to trap the would-be receiver of stolen goods. Here, the true owner was not consulted. Extension of the common-law rule to bar this prosecution would serve no useful purpose, and would merely create a fringe benefit for criminals. *But see* People v. Rojas, 55 Cal.2d 252, 10 Cal. Rptr. 465, 358 P.2d 921, 924–925, 85 A.L.R.2d 252 (1961).

■ While we have concluded that there was no error in permitting the jury to consider the evidence bearing upon the knowing possession of stolen money, the conviction must be affirmed for another reason. The defendants were found guilty of both the receiving and the conspiracy counts. There was ample evidence to support the conspiracy. Each defendant was sentenced concurrently upon both counts. Accordingly, the concurrent-sentence rule applies. United States v. Munns, 457 F.2d 271, 274 (9th Cir. 1972).

■ The attempt to assert an entrapment-type defense in this case must also fail. There was no manufacturing of crime or impermissibly creative activity upon the part of any government agent. *Cf.* Sherman v. United States, 356 U.S. 369, 382, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (concurring opinion); Greene v. United States, 454 F.2d 783, 786–787 (9th Cir. 1971).

■ The search for reversible error in connection with the government's abortive attempt to use a hidden tape recorder is fruitless because the planted recorder produced nothing that could be used by the government either in or out of court.

■ The asserted hearsay evidence, which consisted of an out-of-court conversation between Dennis and Lacey in the presence of Beverly, about a Seattle lawyer in need of money, was properly received. It came into the case when there was sufficient evidence of a conspiracy to make the statements of conspirators admissible against each other. Similarly, even though related to a time prior to that covered by the indictment, evidence of previous robberies and of Lacey's role in disposing of the money was admissible "to show the way the conspiracy came into being and its *modus operandi* when it operated." United States v. Witt, 215 F.2d 580, 583 (2d Cir.), cert. denied, Talanker v. United States, 348 U.S. 887, 75 S.Ct. 207, 99 L. Ed. 697 (1954).

The appellants have urged other errors, but none presents a point which requires discussion.

Affirmed.