**UNITED STATES of America, Plaintiff,**

v.

**Leroy WARSHAWSKY, Ira Warshawsky, and Ted Warshawsky, Defendants.**

**No. 91–CR–20050–BC.**

United States District Court, E.D. Michigan, N.D.

Jan. 29, 1993.

Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, MI, for plaintiff.

Michael D. Ettinger, Oak Lawn, IL, for Leroy Warshawsky.

Patrick A. Tuite, Chicago, IL, for Ted Warshawsky.

Dennis A. Berkson, Chicago, IL, for Ira Warshawsky.

*ORDER GRANTING IN PART AND DE- NYING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT OF AC- QUITTAL OR, IN THE ALTERNA- TIVE, FOR A NEW TRIAL*

CLELAND, District Judge.

## I. BACKGROUND

As part of an investigation focussing on the theft and distribution of stolen automobile parts, the government set up an undercover warehouse in Freeland, Michigan and held itself out as a wholesale automobile parts broker. Its day to day activities included initiating and receiving contacts with people in the automotive industry—including dealer- ships, brokers and warehouse distributors— for the purpose of buying and selling automo- bile parts. General Motors assisted in the investigation by providing the agents with training concerning legitimate as well as ille- gitimate aspects of the auto parts business, and by shipping large quantities of its prod- ucts to the government's warehouse for use during the investigation. Furthermore, Gen- eral Motors officials gave the agents permis- sion to use any stolen General Motors parts that it recovered as part of the continuing investigation. The investigation was compre- hensive, running from November of 1988 through January, 1991.

On June 6, 1990, the government agents obtained possession of 5,100 stolen General Motors air filters from Murray Donald and stored them in its undercover warehouse un- til October 25, 1992, when they shipped them to M & A Automotive, defendants' place of business in Chicago. Similarly, on December 19, 1990, the government agents obtained possession of 145 stolen General Motors air conditioning compressors from Stephen La- Fay and stored them in its the warehouse until December 27, 1990, when they also were shipped to defendants' place of business in Chicago. Several other quantities of non- stolen auto parts provided by General Mo- tors to the government agents for use during its undercover investigation were also shipped to the defendants' place of business, but none of these parts form the basis of the substantive charges.

Defendant Ted Warshawsky was convicted on one count of conspiracy to transport stolen goods under 18 U.S.C. § 371. Defendants Leroy Warshawsky and Ira Warshawsky were convicted on two counts of transporting stolen goods under 18 U.S.C. § 2314 and one count of conspiracy to transport stolen goods under 18 U.S.C. § 371. Specifically, count two charged defendants Leroy Warshawsky and Ira Warshawsky with transporting in interstate commerce the stolen air filters that the government obtained from Murray Donald while count three charged them with transporting the stolen air conditioning compressors that it obtained from Stephen LaFay (Indictment 3–4).

## II. PROCEDURAL POSTURE

All three defendants moved for a Judgment of Acquittal (Fed.R.Crim.P. 29) or, in the Alternative, for a New Trial (Fed. R.Crim.P. 33). Defendants Leroy and Ira Warshawsky argue, *inter alia*, that all of the property charged in the substantive counts had been recovered by the F.B.I. and thus it can no longer be considered "stolen" under *United States v. Monasterski*, 567 F.2d 677 (6th Cir.1977). That court reiterated the common law rule that an individual cannot be convicted of receiving stolen goods when actual physical possession of such goods has been recovered by the owner's agent before delivery to the intended receiver. *Id.* at 684; *see also* Leroy Warshawsky's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial at 4; Ira Warshawsky's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial at 4. In its Response the government maintains that, despite having obtained exclusive possession, custody and control of the goods, its agents never intended to return them to the rightful owner, General Motors. Government's Response at 1. Rather, the intent was merely to use the property, with the owner's permis-

sion, to aid in the undercover investigation. It is the government's position that because its agents did not intend to recover the property for the owner, but instead intended merely to use it as part of an investigation, the property did not lose its stolen character. *Id.* at 3. After a thorough review of this issue [1] this Court holds that under *Monasterski* (and the common law rule) one cannot be convicted of transporting stolen goods under 18 U.S.C. § 2314 when actual physical possession of the goods has been recovered by their owner or his agent (i.e. Any person with a right to possession or control over the goods) before delivery to the intended receiver. The Court further holds that this rule applies without regard to the intent of the government agents vis-a-vis the recovered property. Accordingly, defendants' Leroy Warshawsky's and Ira Warshawsky's Motions for Judgment of Acquittal on Counts 2 and 3 are GRANTED and the verdicts on those counts are hereby set aside under Fed. R.Crim.P. 29(c). All three of the defendants' Motions for Judgment of Acquittal or, in the Alternative, for a New Trial on the remaining conspiracy conviction (Count 1) are DENIED.

## III. STOLEN GOODS

In *United States v. Monasterski*, 567 F.2d 677 (6th Cir.1977), three youths agreed to steal tires from a railroad boxcar. During the heist, they were arrested by the local police who then called the F.B.I. The police and the F.B.I. agents persuaded the youths to press on with the delivery of the tires so that the "fence" might be apprehended. The police then placed identifying markings on some of the tires and loaded them into a van that they supplied. The remaining tires were loaded into a car owned by one of the youths. The van was driven to a park by the local police, accompanied by the others in a car owned by one of the youths. The thieves

---

1. After review of the various motions, this Court issued an Order for Briefing. The Court noted that *Monasterski* appears to be predicated upon an unstated presumption that an agency relationship exists between law enforcement officers (as agents) and rightful owners (as principals). Order for Briefing at 1–2. The Court invited the parties to express their views on the question of whether this implied agency relationship could

be waived by the owner, for whose ultimate benefit such a relationship would have been implied in the first instance. *Id.* After carefully considering the additional briefing submitted by the parties, the Court now concludes that a waiver of the implied agency relationship presumed to exist between police and rightful owners cannot presently be achieved because of the confines of *Monasterski*.

delivered the tires to an intermediary, James Logan, who delivered them to the eventual defendant, Monasterski. A search warrant executed at Monasterski's residence produced the tires. He was ultimately charged and convicted of possessing "stolen goods" under 18 U.S.C. § 659.

In reversing Monasterski's conviction, the court relied on the common law rule that one cannot be convicted of receiving stolen goods if, before the stolen goods reached the intended receiver, they have been recovered by their owner or his agent. *Monasterski*, 567 F.2d at 679 (*citing Regina v. Schmidt*, L.R. 1 Cr.Cas.Res. 15 (1866) and *Regina v. Dolan*, 29 Eng.Law & Eq. 533 (1855)). The court held that:

> In summary, we hold that, in accord with the common law rule, one cannot be convicted of receiving stolen goods when actual physical possession of the stolen goods has been recovered by their owner or his agent before delivery to the intended receiver. We further hold, also in accord with the common law rule, that *the term "agent" means any person with a right to possession or control over the goods. . . .*

*Monasterski*, 567 F.2d at 684 (emphasis added). In a footnote the court noted that the term agent "will generally work to include all types of police officers. . . ." *Id.* at n. 16.

The *Monasterski* court, in determining that at some point in time stolen goods that come into the possession and control of the police lose their status as stolen, further determined that:

> . . . The best and only workable rule is the common law rule—viz, the goods lost their stolen character immediately upon being recovered by the owner or his agent. Trying to choose some later point in time to support the conviction in this case would necessitate a strained reading of the words involved and would yield unnecessary uncertainty

*Monasterski*, 567 F.2d at 681 (footnote omitted).

The government argues that the facts in the instant case can be distinguished from *Monasterski* because its agents did not intend to recover the property for the owner, but instead intended to use it as part of its investigation. Government's Response at 3. Indeed the true owner of the property, General Motors, gave permission to the F.B.I. agents to use, without having to return, any property recovered to facilitate the investigation. Government's Memorandum on Motion for a New Trial pp. 1–3. In support of its argument the government proffers three cases: *United States v. Johnson*, 767 F.2d 1259 (8th Cir.1985); *United States v. Dove*, 629 F.2d 325 (4th Cir.1980); and *United States v. Muzii*, 676 F.2d 919 (2nd Cir.1982).

The government's argument must fail for two reasons. Firstly, it is impossible to distinguish the facts in the instant case from *Monasterski*. With respect to the property involved in the instant case, the F.B.I. agents took possession, custody, and control of the stolen goods before they were sold to the defendants. The stolen air filters (Count 2) were purchased by the F.B.I. and taken into its custody on June 6, 1992, "several months before they were sold to the defendants" on October 25, 1992 (Government's Response at 4). Similarly, the stolen air conditioning compressors (Count 3) were in the exclusive possession and control of the F.B.I. for over one week before they were shipped to the defendants on December 27, 1992 (Tr. 98). Furthermore, the government obtained the owner's permission to use any recovered property in its investigation. Thus, when the government later obtained possession and control of the property, it did so acting as General Motors' "agent" as that term is defined by *Monasterski* and by other courts construing its common law definition. *Monasterski*, 567 F.2d at 684; *United States v. Cawley*, 255 F.2d 338 (3rd Cir.1958) (mail had lost its stolen character because, before its delivery to the defendant, postal inspectors with right to possess were deemed "agents" under the common law definition) (quoting *Regina v. Schmidt*, 1 Crown L.C. 15 (1866); *see also People v. Rojas*, 55 Cal.2d 252, 10 Cal.Rptr. 465, 358 P.2d 921 (1961)).

The government's argument also fails because the cases upon which it relies are distinguishable from the instant case. Those cases draw nice distinctions between "surveillance and observation" (where goods do

not lose their stolen status), on the one hand, and "recovery" (where goods lose their stolen status) on the other. In *United States v. Muzii*, 676 F.2d 919 (2d Cir.1982), two detectives held themselves out as owners of a trucking company to uncover cargo thefts. They allowed criminals to use their warehouse as a "drop" for stolen goods. On two occasions, thieves stored stolen goods in the warehouse for approximately one day prior to delivering them to the buyer. The court held that the detectives did not convert their limited role of observation into recovery because they did not exercise control over the goods on behalf of the rightful owner in an attempt to entrap the receiver, nor did they direct delivery to the receiver. *United States v. Muzii*, 676 F.2d at 924. In the instant case, this is precisely what happened with the air filters (Count 2) and the air conditioning compressors (Count 3). *See* Tr. pp. 74; 98–99.

In *United States v. Dove*, 629 F.2d 325 (4th Cir.1980), F.B.I. agents obtained the cooperation of Baker, who faced prosecution, to develop contacts and information on the trafficking of stolen automobiles. Baker befriended Hutto, who was involved in an automobile theft ring. Two separate incidents occurred which required the court to determine the status of stolen goods. In the first incident, Baker purchased a stolen car from Hutto with F.B.I. funds and kept it on an F.B.I. lot for over a month before selling it to the defendant. In the other incident Baker assisted Hutto, at Hutto's request, in stealing bulldozers that Hutto had spotted at a construction site. The court held that the bulldozers did not lose their status as "stolen goods" because at all times Baker was merely acting under the "general criminal design" of Hutto. *United States v. Dove*, 629 F.2d at 325. Baker's conduct was viewed not as recovery for the owner but as mere observation. *Id.* The stolen automobile, however, was purchased by Baker with F.B.I. funds and, upon the sale, Hutto lost all connection with it. Furthermore, the F.B.I. retained

exclusive possession of the car for over a month. Accordingly, the court held, there was "no basis on which to hold that [the car purchased by the defendant] retained its status as 'stolen'...." *Id.*

The facts in the instant case are closely aligned with the automobile transaction in *Dove* and unlike its bulldozer heist. Indeed it cannot be argued under *Dove* that once the government purchased the stolen auto parts with its own funds, exclusively possessed them in its warehouse for between eight and thirty days, and shipped them to the defendants, that the F.B.I. was merely acting under the "general criminal design" of the respective third parties—who lost all connection with the goods after they were transferred to the government's warehouse and who were unaware that the goods would ultimately be shipped to the defendants.

In the last case relied upon by the government, *United States v. Johnson*, 767 F.2d 1259 (8th Cir.1985), the court held that the district court did not err by refusing to give an instruction which equated actual, exclusive physical possession of stolen property with recovery.[2] Such an instruction (which simply reiterates *Monasterski* and the common law rule), the court determined, "improperly assumes that actual[,] exclusive physical possession is equivalent to recovery." *Id.* at 1269. The instruction was deemed insufficient because it failed to address the "intent" of the police officers and whether such intent reflected a purpose to recover stolen goods—as opposed to a desire to facilitate apprehension of other criminals. The former, the court determined, indicates actual recovery while the latter is demonstrative of mere observation or surveillance. *United States v. Johnson*, 767 F.2d at 1269.

In support of this test the *Johnson* court invoked the reasoning of *Dove* and *Muzii*. *United States v. Johnson*, 767 F.2d at 1268–69. However, as shown above, those cases do not go that far. Neither *Dove* nor *Muzii* deviates from the common law rule that once

---

2. The following instruction, in pertinent part, was requested:
   when law enforcement officers gain actual, exclusive physical possession of stolen property with knowledge of its stolen nature, the law

enforcement officers hold the recaptured stolen goods in trust for the true owner, and the character of the goods as stolen is lost.... *United States v. Johnson*, 767 F.2d at 1266–67 n. 6.

property is recovered by the police it loses its status as "stolen." Both cases merely reemphasize the firmly implanted judicial precedent which distinguishes between "observation and surveillance" and "recovery." *United States v. Muzii,* 676 F.2d at 923; *United States v. Dove,* 629 F.2d at 329. As the government concedes, neither case directly states the position relied upon by the *Johnson* court, i.e. that where the government officers do not intend to recover property for the owner, but instead intend merely to use it as part of an investigation, the goods do not lose their stolen character. Government's Response at 3. Such a test would *sub silentio* overrule both *Monasterski* and the common law rule. Indeed, acceptance of this rule would necessitate a different result from the one reached by the court in *Monasterski,* where the F.B.I. agents intended to avoid any repossession of the stolen goods in favor of the owner because they were "[d]esirous of catching the intended outlet or 'fence'...." *Monasterski,* 567 F.2d at 678. Accordingly, this Court holds that once government agents obtain actual, physical possession over stolen property, then it has been "recovered" under *Monasterski* and the common law rule, irrespective of whether or not the ultimate intent of the agents was to recover the property for the rightful owner or merely to use it to facilitate in an investigation.

This is not to say, however, that the "intent" of the agents is irrelevant. It is likely, for example, that the agents' intent would be highly relevant to the determination of whether they were merely conducting "observation or surveillance," on the one hand, or whether they had "actually recovered" the goods on the other. Indeed to "possess" goods agents must have control "... with the *intent* to have and to exercise such control."

Black's Law Dictionary 1163 (6th ed. 1990) (emphasis added). However, *after* the agents recover stolen goods (i.e. after they obtain physical possession and control over them), their intent beyond that time becomes irrelevant to the determination of whether or not those goods have already lost their stolen status under *Monasterski* and the common law rule.

The Court recognizes that the holding required by *Monasterski* will preclude a great deal of what would otherwise be effective undercover investigative work[3], and that it may be possible to construct a rational argument for judicial reconsideration of *Monasterski,* perhaps by embracing the waiver-of-implied-agency concept briefly mentioned above or the notion that the common law rule has been misinterpreted by other federal courts, including *Monasterski.* Such reconsideration is not appropriate, however, for a trial court, and this Judge is thus precluded from accepting the government's theory.

In the instant case, the goods lost their stolen status when the F.B.I. agents obtained exclusive possession and control of them. This occurred, in each instance, before the goods were delivered to the defendants. Accordingly, defendants' Leroy Warshawsky's and Ira Warshawsky's Motions for Judgment of Acquittal of Counts 2 and 3 are GRANTED and the jury's verdict with respect to those counts is hereby set aside under Fed. R.Crim.P. 29(c).

## IV. CONSPIRACY

All three defendants maintain that one cannot be convicted of a conspiracy to transport stolen goods, knowing them to be stolen, unless such goods were in fact "stolen." In essence they argue that a determination that the agents recovered the goods listed in Counts 2 and 3 requires, *a fortiori,* a finding for them on the conspiracy count

---

3. If there were a parallel common law rule that controlled substances or sawed-off shotguns "lost their character" as illegal when recovered or handled by police officers, then there would be no possibility of prosecuting for possession those willing to illegally traffick in drugs or firearms detected by so-called "reverse buys." No such rule exists, however, and courts have upheld convictions for possession of controlled substances and illegal guns based upon evidence that the defendant purchased same from under-

cover government agents. *United States v. Ivy,* 973 F.2d 1184 (5th Cir.1992) (defendants convicted of, *inter alia,* possession of cocaine with intent to distribute as a result of reverse sting operation where government agents posed as cocaine suppliers); *United States v. Toner,* 728 F.2d 115 (2d Cir.1984) (defendants convicted of possession of unregistered weapons after purchase from undercover FBI agent of twenty M-16 machine guns).

(Count 1). The court in *U.S. v. Petit,* 841 F.2d 1546 (11th Cir.1988) dismissed this identical argument. In *Petit* the government set up a sting operation in which it obtained the permission of a carrier of electronic equipment to use the equipment as "bait" while it was en route to its rightful destination. Defendants, who were convicted only of conspiracy to receive or ship stolen goods, appealed alleging that, because the goods were never stolen, their convictions should be reversed. The Eleventh Circuit rejected this argument stating that "[t]he crime of conspiracy is complete once the conspirators, having formed the intent to commit a crime, take any step in preparation...." *Id.* at 1550 (quoting *State v. Moretti,* 52 N.J. 182, 187, 244 A.2d 499, 502, *cert. den'd,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)). The rationale for the *Petit* court's holding is straightforward: the charge of conspiracy is concerned with only the intent of the alleged perpetrators. This Court adopts the reasoning of *Petit* and other courts in holding that, for a conspiracy conviction under section 371 to stand, the government is not required to prove that the goods were actually stolen. *See United States v. Sarro,* 742 F.2d 1286 (11th Cir.1984); *United States v. Bobo,* 586 F.2d 355 (5th Cir.1978). Accordingly, Defendants' Motions for Acquittal, or Alternatively, for a New Trial on this issue is DENIED.

## V. MISCELLANEOUS CHALLENGES

In their Motions for Acquittal or, in the Alternative for a New Trial, defendants argue that their convictions should be set aside for various other reasons, including: that this Court erred in giving a "deliberate ignorance" instruction as it relates to the conspiracy count; failure to give defendants' requested jury instructions; improper expert testimony; and insufficiency of the evidence. The Court finds that these other arguments have no merit. Accordingly, to the extent that any of the motions prays for this Court to set aside the remaining conspiracy conviction (or grant a new trial on same), it is DENIED.

IT IS SO ORDERED.