STATE OF NORTH CAROLINA v. ROSE MAE GRIFFIN

No. 7315SC253

(Filed 11 April 1973)

**1. Criminal Law § 106— circumstantial evidence — sufficiency to overrule nonsuit**

Where evidence introduced by the State is circumstantial in nature, it is not necessary that the evidence establish facts so connected and related as to point unerringly to defendant's guilt and exclude any other reasonable hypothesis in order to withstand nonsuit; rather, there must be substantial evidence against the accused of every essential element that goes to make up the offense charged in order to submit the case to the jury.

**2. Homicide § 21— second degree murder — sufficiency of evidence to overrule nonsuit**

Evidence was sufficient in a murder case to withstand nonsuit where it tended to show that defendant and deceased who were married were driving along a rural road at the time of the homicide, five gunshots sounded in rapid succession as the car came to a halt, five bullet holes were observed on the right side of deceased's head, a .22 caliber six-shot revolver was on the seat beside deceased when an officer arrived, a search of defendant's purse revealed five spent .22 caliber cartridge casings, deceased had changed his life insurance beneficiary to his wife's name two months before his death, and defendant had previously threatened to kill her husband.

**3. Criminal Law § 99— questions by trial court — no expression of opinion**

The trial court in a murder case did not express an opinion in violation of G.S. 1-180 by asking defendant questions with respect to her testimony that deceased was driving fast prior to the shooting, that defendant told deceased to slow down, that deceased threatened to kill defendant, that deceased pulled a pistol, and defendant's reason for reloading the pistol, where the questions and answers tended to exculpate rather than inculpate defendant and where the court restricted its questioning to statements previously testified to by defendant.

**4. Criminal Law § 113— necessity for instruction on circumstantial evidence**

Jury instructions with respect to circumstantial evidence were adequate, particularly since the State relied primarily on direct evidence and no instructions on circumstantial evidence were required.

APPEAL by defendant from *Clark, Judge,* 13 November 1972 Criminal Session of CHATHAM Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the murder of her husband, Wesley Griffin.

State v. Griffin

Prior to offering any evidence, the solicitor announced that he would seek a verdict of either murder in the second degree or of voluntary manslaughter, whichever the facts would support. Defendant pleaded not guilty but a jury returned a verdict of guilty of voluntary manslaughter. From judgment imposing prison sentence of not less than eight nor more than twelve years, defendant appealed.

*Attorney General Robert Morgan by C. Diederich Heidgerd, Associate Attorney, for the State.*

*Dark & Edwards by L. T. Dark, Jr.; Billy R. Craig for defendant.*

BRITT, Judge.

[1] Defendant first assigns as error the failure of the trial court to sustain her motions for nonsuit. She contends that since "all of the evidence introduced by the State was circumstantial in nature" and that such evidence "must establish facts so connected and related as to point unerringly to defendant's guilt and exclude any other reasonable hypothesis," the trial court erred in denying her nonsuit motion.

A like contention was rejected in *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). We quote from the opinion by Justice Higgins, pp. 383-384:

"Admittedly, this is a case of circumstantial evidence. The defendant argues, therefore, that it was the duty of the trial court to analyze and weigh the evidence and to sustain the motion for judgment as of nonsuit unless the evidence, when so weighed and analyzed, points unerringly to the guilt of the accused and excludes every other reasonable hypothesis. The argument does not distinguish between the function of the court and the function of the jury. When the evidence is closed and the defendant moves for a directed verdict of not guilty, or demurs to the evidence, or moves for judgment of nonsuit, (the three being for all practical purposes synonymous) the trial court must determine whether the evidence taken in the light most favorable to the State is sufficient to go to the jury. That is, whether there is substantial evidence against the accused of every essential element that goes to make up the offense charged. If the trial court so finds, then it is its duty to overrule the

motion and submit the case to the jury. Otherwise, the motion should be allowed. If the motion is overruled, it becomes the court's duty to charge the jury that in making up its verdict it must return a verdict of not guilty unless the evidence points unerringly to the defendant's guilt and excludes every other reasonable hypothesis. It is the duty of the jury to weigh and analyze the evidence and to determine whether that evidence shows guilt beyond a reasonable doubt.

\* \* \* \* \* \*

\* \* \* It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury. (Citations.)"

In the case at bar, the evidence taken in the light most favorable to the State tended to show:

Defendant and deceased were married to each other on 30 August 1969. On 22 May 1971 at approximately 7:00 p.m., defendant and her husband were riding in a 1965 blue Ford along rural paved road No. 2145 near the Southern Wood Piedmont Plant (Southern Wood) in the Gulf community of Chatham County. As the car slowly came to a stop, five gunshots sounded in rapid succession. Defendant got out of the car on the passenger side and walked around behind the car to the driver's side and leaned forward as though talking to the driver. Immediately thereafter, one Tommy Tillman, a neighbor in the Gulf community who had known the deceased 23 or 24 years, was on his way to work at Southern Wood when he saw the Ford with its brake lights on and the motor running stopped in the eastbound lane of traffic on the aforesaid road. Tillman walked up to the side of the car and observed deceased behind the steering wheel with his head slumped sideways. A gun pointing toward deceased was on the seat in deceased's hand and his right foot was on the brake pedal. Turning to go back to his car,

Tillman saw defendant approaching from a nearby building and she said: "Lord, Wes has been shot." "Wes and I got in an argument over a cow and we were fighting over the gun and the gun went off and it shot Wes." Defendant shook the deceased and he fell over in the seat. Defendant removed the gun from deceased's hand and dropped it on the ground. She later picked up the gun and placed it back on the seat.

Deputy Sheriff Whitt arrived at the scene approximately 7:40 p.m. Whitt saw a .22 caliber six-shot revolver on the right front bucket seat beside deceased. The pistol had five live bullets in it and one spent bullet casing. Whitt observed five bullet holes on the right side of deceased's head. One hole was "almost directly in the ear; two above in the front part of his ear in his head, and two behind— . . . . All five holes were near or above his right ear in the right side of his face." Powder burns were on the inside of deceased's right elbow and on the muscle of his right arm.

With defendant's permission two police officers searched her pocketbook and found five spent .22 caliber cartridge casings in a green change purse. Regarding the gunshots defendant testified: "When I grabbed his arm the gun just went and fired. I don't know whether I ever had the gun in my sole possession at that time; I don't know one way or the other. I was using both hands when I was struggling with it."

Further evidence tended to show that deceased had changed his life insurance beneficiary to his wife's name two months before his death; deceased's son-in-law testified that defendant had threatened to kill her husband. It was stipulated that deceased died as a result of a wound caused by a gunshot which penetrated his brain on 22 May 1971.

[2] We do not agree with defendant that "all of the evidence introduced by the State was circumstantial." Even so, there is plenary evidence to establish every material element of the crime charged. We find no merit in the assignment of error.

[3] Defendant next assigns as error the questioning of defendant while on the stand by the trial court contending that such questioning constituted an expression of the court's opinion in violation of G.S. 1-180. We do not agree.

It is well recognized that the court may ask questions designed to elicit a proper understanding and clarification of the

witness' testimony or to bring out a fact overlooked. 2 Strong, N. C. Index 2d, Criminal Law, § 99, p. 634. Judges preside over courts not as moderators but as essential, active factors or agencies in the due and orderly administration of justice, and it is proper, sometimes necessary, that they ask questions of a witness in order to get the truth before the jury. *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). A defendant will not be granted a new trial for remarks of the court during the trial unless the remarks prejudice defendant in the light of the circumstances under which they were made. 2 Strong, N. C. Index 2d, *supra,* p. 635.

In the case at bar, the able trial judge prefaced his questioning by saying, "Let me ask you this for clarification . . . . " The questions asked by the court were with regard to defendant's testimony that deceased was driving fast prior to the shooting, that defendant told deceased to slow down, that deceased threatened to kill defendant, that deceased pulled a pistol, and defendant's reason for reloading the pistol. It would appear that the questions were beneficial rather than prejudicial to defendant's case since the questions and answers tended to exculpate rather than inculpate her. Further, the court restricted its questioning to statements previously testified to by defendant and sought only to ascertain if defendant had made a certain statement as the court had understood her to make it. The assignment of error is overruled.

[4] In her last assignment of error defendant contends the trial court erred in its charge to the jury by failing to declare and explain the law relating to circumstantial evidence. In *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), Lake, Justice, speaking for the court said:

" * * * While circumstantial evidence is sufficient to justify a conviction when, and only when, the circumstances proved are consistent with the hypothesis of guilt and inconsistent with every other reasonable hypothesis, this Court has repeatedly held that no set form of words is required to be used in conveying to the jury this rule relating to the degree of proof required for conviction upon circumstantial evidence. (Citations.)"

In the case at bar, we think the jury instructions were adequate. If defendant desired additional instructions, she should have requested them. *State v. Westbrook, supra; State*

*v. Warren,* 228 N.C. 22, 44 S.E. 2d 207 (1947). Furthermore, where, as here, the State relies primarily on direct evidence, instructions on circumstantial evidence are not required. *State v. Sutton,* 225 N.C. 332, 34 S.E. 2d 195 (1945) ; *State v. Wall,* 218 N.C. 566, 11 S.E. 2d 880 (1940).

For the reasons stated, we find

No error.

