STATE OF NORTH CAROLINA v. DARRILL LEWIS HANDSOME

No. 116

(Filed 3 June 1980)

1. **Criminal Law § 26.5— punishment for kidnapping and armed robbery—no double jeopardy**

    There was no double jeopardy in defendant's having been convicted of and sentenced for armed robbery and kidnapping of the same person.

2. **Criminal Law § 138.2; Constitutional Law § 79— consecutive sentences—sentences within statutory limits—no cruel and unusual punishment**

    There was no merit to defendant's contention that consecutive sentences imposed upon him which made him eligible for parole only after 32 years constituted cruel and unusual punishment, since all of the sentences imposed were within statutory limits and therefore did not constitute cruel and unusual punishment.

3. **Criminal Law § 113.7— acting in concert—instruction supported by evidence**

    Though defendant presented evidence of duress, the trial court did not err in charging on acting in concert, since there was evidence that defendant was present at the scene of the crimes and, pursuant to a common plan or purpose to commit those crimes, acted together with another who performed the acts necessary to constitute the crimes charged.

4. **Robbery § 4.3— armed robbery—sufficiency of evidence**

    Evidence was sufficient to show that the crime of armed robbery was committed and that defendant committed it where it tended to show that the victim's personal property was taken from his person without his consent by violent means with the intent to steal, and a firearm was used, even though the victim was shot first and then his money was taken.

5. **Criminal Law § 42— victim's clothing—admissibility**

    The trial court in an armed robbery prosecution did not err in allowing a victim's clothing into evidence since the victim identified it as clothing he was wearing on the night of the crimes, and he stated that the clothing was "now bloody and dirty" which was consistent with his testimony that he had been shot and thrown out of a car into a ditch; moreover, though the trial court erred in allowing hearsay testimony from a police officer that he received the articles of clothing from an emergency room nurse who told him that she had received the clothing from the victim, admission of the testimony was not prejudicial error because the victim had already identified the articles of clothing as those he had on the night of the crimes.

6. **Criminal Law § 43— photographs of crime scene—admissibility**

    The trial court did not err in admitting photographs of the crime scene into evidence, since the photographs were properly authenticated.

**7. Criminal Law § 88.1— cross-examination limited—no error**

There was no merit to defendant's contention in an armed robbery case that the trial court erred in restricting his cross-examination of a witness concerning the witness's failure to tell police officers on the night the crimes were committed that defendant had a gun since the jury was made fully aware of all the relevant facts concerning defendant's theory on this point.

**8. Criminal Law § 85.1— defendant's character evidence—evidence of specific act inadmissible**

Where defendant testified in general terms about his volunteer work for a certain organization, it was not error to refuse to allow him to testify as to a specific act he performed concerning that work as evidence of his good character in order to show that he did not commit the crimes charged.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Brown, J.* at the 8 October 1979 Session of WAYNE County Superior Court.

Defendant was charged in indictments, proper in form, with: kidnapping George Thomas Bryant; assaulting Bryant with intent to kill inflicting serious bodily injury; armed robbery of Bryant; kidnapping Jimmy Floyd Uzzell; and assaulting Uzzell with intent to kill.

The State's evidence tended to show that George Bryant arrived at his apartment at approximately 10:30 p.m. on 20 May 1979. The defendant met him on the street and walked with him to his apartment. When George entered his apartment, he found that Gerald Bryant was already inside. Gerald pointed a long, black pistol at George and told him to lie down on the floor. George testified that the defendant also had a gun but did not take it out or use it. He stated that he knew this because on the way up to his apartment the defendant had asked him to wait so that he could go back to his car and get his gun.

Gerald asked George where Jimmy Uzzell was and George replied that "he was home or maybe with his girl friend." Gerald instructed the defendant to tie George up. Defendant pulled strings and rags out of his pocket and tied George up. Gerald then instructed the defendant "to go get Jimmy."

The defendant found Jimmy Uzzell at home and told him that George wanted to see him. The defendant and Uzzell returned to George's apartment. As they entered, Gerald grabbed Uzzell, put

a gun to his head and pulled him into the apartment. Gerald then told Uzzell and the defendant to both get on the floor. The defendant then stated to Gerald: "Man, you can't kill me; I got a wife and kid. Let me write a letter to my wife." Gerald agreed and defendant got up and wrote something on a piece of paper. Uzzell testified that two people then blindfolded him and tied him up.

Gerald and the defendant then took Uzzell outside to George's car and put him in the back seat. The defendant got behind the wheel of the car while Gerald went back to the apartment and brought George to the car and put him in the back seat also. Gerald then got in the front seat of the car and instructed the defendant where to drive. At one point, as the car slowed to make a turn, Uzzell opened the door and jumped from the car. Gerald shot at him and they searched for him for approximately five minutes before driving off.

George observed the defendant whisper to Gerald. Gerald then turned and shot George three times. Gerald searched George's pockets, took his money and then pushed him out of the car. The defendant took Gerald to Snow Hill and put him out at a downtown intersection. Defendant then went home and later that night was taken into custody by police officers.

Defendant testified that Gerald visited him on the afternoon of 20 May 1979. Later that afternoon, defendant borrowed a car from James Calvin Johnson. The defendant and Gerald then went to George's apartment. Gerald told the defendant that he planned to take some drugs from George and the defendant "had better [do] what he told . . . [him] to do." Defendant testified that,

> "[Gerald] told me that if I didn't do what he told me to do that me and my whole family were in trouble. . . . He told me if I didn't do what he told me to do that I could forget about my family. . . . He said all he had to do was to make one call. . . . [H]e told me he had my family watched."

Defendant testified that while they were waiting for George to get home Gerald allowed him to go back to his home and check on his family. He went home and saw his wife and child but "I didn't take them to the police because I was afraid to. I didn't want to upset [my wife]." Defendant returned to George's apartment. He stated that after George arrived, Gerald gave him some

string and instructed him to tie up George. Defendant did as he was instructed. He further stated that when he went to find Uzzell, "I didn't get in touch with my wife because I was afraid to. I didn't know if anyone was at home with my wife."

After defendant and Uzzell were in George's apartment, the defendant was forced to lie on the floor and Gerald tied his hands and taped his feet. Later, Gerald untied his feet and defendant then walked outside to George's car. Defendant did not attempt to escape while Gerald was putting George or Uzzell in the car because he was afraid for himself and his family. Defendant stated that he did not share in the proceeds of the robbery.

Defendant testified that Gerald had told him on a previous occasion that he planned to rob George but decided against doing it when he learned that George and the defendant were friends. George sold drugs, particularly marijuana, and the defendant had seen George sell drugs to Gerald on at least five or six occasions.

The jury found the defendant guilty as charged with respect to all of the offenses. The trial judge found that "the kidnapping victim [Uzzell] escaped in a safe place [and] was not sexually assaulted nor seriously injured." The defendant was sentenced to twenty-five years in prison for this kidnapping conviction and was given a consecutive ten-year sentence for assaulting Uzzell with a deadly weapon with intent to kill. The trial judge found "that the kidnapping victim [George Bryant] was not released in a safe place and was seriously injured;" therefore, defendant was given a life sentence for this kidnapping conviction. Defendant was given a sentence of twenty years for assaulting George Bryant with intent to kill inflicting serious bodily injury and the trial judge provided that this sentence would begin to run at the expiration of the life sentences. Defendant was given a sentence of not less than ten nor more than fifty years for his conviction of robbery with a firearm and this sentence will also begin to run at the expiration of his life sentence.

Defendant appealed to this Court from his kidnapping conviction which resulted in a life sentence. Defendant's motion to bypass the Court of Appeals on his appeal from his four other convictions and sentences was allowed by this Court on 18 March 1980.

Other facts necessary to the decision of this case will be related in the opinion.

*David B. Brantley for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Jane Rankin Thompson for the State.*

COPELAND, Justice.

[1] By his tenth assignment of error, defendant contends that the trial judge erred in giving him separate and consecutive sentences for the armed robbery and kidnapping of George Bryant.

Defendant concedes in his brief that this Court's decision in *State v. Williams,* 295 N.C. 655, 249 S.E. 2d 709 (1978), is dispositive of this issue. It is not necessary to prove the completed offense of armed robbery as a part of proving the offense of kidnapping. Under G.S. 14-39 it is necessary to prove that the confinement, restraint, or removal is *for the purpose of,* among other alternatives, "facilitating the commission of any felony." *Id.; State v. Dammons,* 293 N.C. 263, 237 S.E. 2d 834 (1977); *see, State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978); *see also, Banghart v. United States,* 148 F. 2d 521 (4th Cir. 1945) (per curiam), *cert. denied,* 325 U.S. 887 (1945). Thus, there is no violation of the Double Jeopardy Clause of the Fifth Amendment in defendant's having been convicted of and sentenced for both offenses. The situation is analogous to the crime of burglary. An element of burglary is that the defendant intended to commit a felony at the time of the breaking and entering. The defendant may also be convicted of that felony if he in fact commits it after accomplishing the breaking and entering with that intent.

[2] Defendant also maintains that the consecutive sentences imposed in this case which make him eligible for parole only after thirty-two years constitute cruel and unusual punishment.

All of the sentences imposed were within statutory limits. We have held that sentences that are within the statutory limits and impose consecutive sentences do not constitute cruel and unusual punishment. *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973), and cases cited therein; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966). This assignment of error is overruled.

[3]   By his eleventh assignment of error, defendant contends that since he asserted the defense of duress he was at most guilty of aiding and abetting and it was error for the trial judge to charge on acting in concert with respect to all of the crimes charged. There is evidence that the defendant was present at the scene of the crimes and, pursuant to a common plan or purpose to commit those crimes, acted together with another who performed the acts necessary to constitute the crimes charged. Thus, the trial judge properly instructed on acting in concert. *State v. Williams*, 299 N.C. 652, 263 S.E. 2d 774 (1980); *State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979). This assignment of error is overruled.

[4]   By his sixth, seventh and ninth assignments of error, defendant contends that his motions for nonsuit, judgment notwithstanding the verdict, arrest of judgment, and for a new trial should have been granted because the evidence is insufficient to show that the crime of armed robbery was in fact committed and that if it was, the defendant did not participate in it.

As held above, the trial judge properly instructed on acting in concert with respect to the crime of armed robbery. *State v. Williams, supra; State v. Joyner, supra.* Defendant further argues that no armed robbery was committed because no threats or requests for money were made to the victim before the money was taken. The victim was shot first and *then* his money was stolen. This contention is devoid of merit.

George Bryant's personal property was taken from his person without his consent by violent means with the intent to steal. This is the definition of robbery. *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971), *cert. denied*, 409 U.S. 948 (1972). In addition, a firearm was used thus making the crime armed robbery. The elements of violence and taking were so joined in time and circumstances in one continuous transaction amounting to armed robbery as to be inseparable. *State v. Lilly*, 32 N.C. App. 467, 232 S.E. 2d 495, *cert. denied*, 292 N.C. 643, 235 S.E. 2d 64 (1977). These assignments of error are overruled.

[5]   By his second and fourth assignments of error, defendant contends that it was error to allow a victim's clothing to be introduced into evidence since a sufficient chain of custody was not established and that it was error to admit a certain hearsay statement.

In order to be admitted into evidence, real evidence, such as the clothing in this case, must be authenticated as the same objects involved in the incident and it must be shown that the objects have undergone no material change in condition since the incident. *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977). Trial judges must exercise sound discretion in making these determinations. *Id.*

The clothing was properly admitted into evidence. The victim identified the clothing in court as the clothing that he was wearing on the evening of 20 May 1979. He stated that the clothing was "now bloody and dirty." This was consistent with his testimony that he had been shot and thrown out of a car into a ditch. It was error to allow a police officer to testify that he received the articles of clothing from an emergency room nurse who told him that she had received the clothing from the victim. This was a hearsay statement offered to prove the truth of the matter asserted in the statement. Nevertheless, its admission was not prejudicial error because the victim had already identified the articles of clothing as those that he was wearing that night and the exhibits had already been properly admitted into evidence. These assignments of error are overruled.

[6] By his third assignment of error, defendant contends that the trial judge erred in admitting photographs of the crime scene into evidence. The photographs were properly authenticated. The jury should be instructed to consider photographs for illustrative purposes only; however, where the defendant does not request that the limiting instruction be given, as he did not in this case, it is not error when the instruction is not given. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). This assignment of error is overruled.

By his first assignment of error, defendant maintains that the trial judge erred in allowing George Bryant to testify that he thought he was "going to die the whole time." Bryant had earlier testified that while he was tied up in his apartment he thought he was going to be killed and that after he was shot he was in a great deal of pain and had difficulty breathing. Since this substantially similar testimony was admitted without objection, this assignment of error is without merit, 1 Stansbury's N.C. Evidence § 30 (Brandis Rev. 1973) and cases cited therein, and is overruled.

[7] By his fifth assignment of error, defendant argues that it was error to restrict his cross-examination of Jimmy Uzzell. Defendant's theory is that Uzzell did not state to police officers on the night the crimes were committed that the defendant had a gun. He realized after a conference with the district attorney that it would strengthen the case against the defendant if Uzzell testified that the defendant had a gun on that night. Therefore, he so testified.

This theory was fully explored during the course of the trial. Uzzell testified that he thought the defendant hit him over the head with a gun and that he told a police officer on the night it happened that the defendant had a gun. Officer Whaley testified that Uzzell said he had been hit over the head several times and that he had seen the defendant with a gun on previous occasions but Uzzell did not tell him that night that defendant had a gun on 20 May 1979. Officer Uzzell testified that he interviewed George Bryant and Jimmy Uzzell on 20 May 1979 and he did not recall either of them saying that the defendant had a gun. Concerning the meeting in the district attorney's office, Officer Whaley testified that George Bryant stated that the defendant had a gun but that *Jimmy Uzzell stated that the defendant did not have a gun.* Since the jury was made fully aware of all the relevant facts concerning defendant's theory on this point, this assignment of error is overruled.

[8] By his eighth assignment of error, defendant contends that testimony regarding his good character as evidence that he did not commit the crimes charged was improperly restricted.

A defendant is permitted to introduce evidence of his own good character as substantive evidence of his innocence. 1 Stansbury's N.C. Evidence § 104 (Brandis Rev. 1973) and cases cited therein. When such evidence of good character is offered as evidence of a person's conduct on a particular occasion, it may be proved by reputation evidence but not by specific acts. Specific acts may be asked about on cross-examination to test the witness' knowledge of the reputation of the person in question. *Stansbury's, supra*, §§ 110-111 and cases cited therein.

Defendant testified in general terms regarding his volunteer work for the Congress of Black Awareness in Wayne County. It was not error to refuse to allow him to testify as to a specific act

he performed concerning that work (his participation in Black Family Day in August 1978) as evidence of his good character in order to show that he did not commit the crimes charged. *State v. Vaughn*, 296 N.C. 167, 250 S.E. 2d 210 (1978). This assignment of error is overruled.

Defendant received a fair trial free from prejudicial error. The convictions and sentences are affirmed because in the trial we find

No error.

Justice BROCK did not participate in the consideration or decision of this case.